**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:20-cv-22962**

AERO DOC, INC.,

      Plaintiff,

vs.

SATELITES MEXICANOS, S.A. DE C.V.
d/b/a EUTELSAT AMERICAS,

      Defendant.

_____/

**COMPLAINT**

Plaintiff AERO DOC, INC. (**"Aerodoc"**) sues Defendant Satelites Mexicanos, S.A. de C.V., doing business as Eutelsat Americas (**"Eutelsat"**) and alleges:

**Nature of Action**

1.      In 2015, Aerodoc and Eutelsat entered into an agreement for Aerodoc's provision of various services related to the deployment of satellite antennas in South America. Under the agreement, Eutelsat agreed to make an initial lump sum payment and then pay the balance of the amount owed in yearly installments over a ten-year period, the last payment being due in 2024.

2.      Now, five years into its ten-year obligation, Eutelsat has revisited the terms of the agreement and decided it does not like the bargain it struck and will not pay the outstanding invoices or remaining amounts. Aerodoc sent a default notice for non-payment, to which Eutelsat responded almost instantaneously, wrongfully purporting to terminate the agreement. This suit follows.

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

3.      The bottom line is that Eutelsat made a deal with Aerodoc five years ago, failed to do what it needed to do to make the most out of the deal, and now the market has moved against Eutelsat. Video analog, which required more of the infrastructure contemplated by the parties' agreement, has been on the wane and streaming services, which move content digitally through data lines, have been on the rise. Eutelsat wants to cut its losses and get out of the deal. Fine.

4.      But on the way out, Eutelsat not only refuses to pay what it owes but also claims to have the right upon its termination, even if wrongful, to exercise the agreement's call option and acquire for $1 per unit all of the satellite antennas purchased, owned, and either deployed in the field or held in storage facilities by Aerodoc.  Not fine.

5.      The agreement does not permit Eutelsat to materially breach its terms, wrongfully purporting to terminate, and then exercise a call option that was available only at the expiration of the ten-year term or upon the agreement's proper termination. And it certainly does not provide a call option right to acquire antennas purchased and stored by Aerodoc, as Eutelsat claimed in its purported termination letter.

6.      As it stands, Eutelsat now owes Aerodoc almost two million dollars in earned fees and additional services Eutelsat expressly requested during the course of the parties' relationship.

7.      Accordingly, Aerodoc seeks a judgment for the unpaid invoices and other amounts due and owing under the agreement and a judicial determination as to Eutelsat's purported right to exercise the call option.

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

## **Parties**

8.      Plaintiff Aerodoc is a corporation organized and existing under the laws of Florida, having its principal place of business in Miami-Dade County, Florida.

9.      Aerodoc is in the business of providing IoR (Importer of Record), transportation, warehousing, and project coordinating services for the deployment of telecommunication, broadcasting, and satellite equipment. Aerodoc provides these services for clients in over 160 countries.

10.      Defendant Eutelsat is a corporation organized and existing under the laws of Mexico, having its principal place of business in Mexico City, Mexico.

11.      Eutelsat operates satellites to provide video transmission and broadcasting for networks, content programmers, and other distributors located in the Americas.

## **Jurisdiction and Venue**

12.      This Court's jurisdiction over this action is based on 28 U.S.C. § 1332(a), there being diversity of citizenship between the parties. The amount in controversy exceeds $75,000, exclusive of interest and costs.

13.      This is also an action for declaratory judgment pursuant to 28 U.S.C. § 2201 for the purpose of determining a question of actual controversy between the parties, as described below.

14.      This Court has personal jurisdiction over Eutelsat because the company consented to the jurisdiction of this Court in § 26 of the agreement dated June 24, 2015 by and between Aerodoc and Eutelsat (**the "Services Agreement"** or **"Agreement"**), which is the subject of this suit and attached as Exhibit A.

HomeR BonneR Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

15.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, such as the direction of Eutelsat's acts and omissions giving rise to the claims, and the agreement that is the subject of the claims alleged required performance in and was in part performed in this judicial district. Moreover, venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) because Eutelsat is deemed to reside in this judicial district because it is subject to this Court's personal jurisdiction with respect to this action.

## Common Allegations

### I.     The Contract Between Aerodoc and Eutelsat.

16.     Interested in complementing and expanding its capacity to provide video transmissions services at and beyond specific satellite orbital positions, Eutelsat entered into the Services Agreement with Aerodoc.

17.     The term of the Services Agreement commenced on June 15, 2015, and was to remain in effect for ten years, expiring on June 15, 2025. Services Agreement § 6.

18.     As part of its services under the Agreement, Aerodoc conducted a survey of Cable Head Ends[1] operating in various Latin American countries to determine, among other things, their capacity to receive Eutelsat's satellite transmissions (i) with existing equipment, (ii) by accepting an upgrade package to convert existing equipment into a dual-feed system, or (iii) or by accepting antenna equipment with a dual-feed system. Services Agreement §§ 1, 1.1.

---

[1] "Cable Head Ends" are master facilities that receive satellite transmissions and for processing and distribution over a cable network.

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

19.     Upon receipt of the survey results, Eutelsat agreed to provide Aerodoc with a list of Cable Head Ends who had agreed to receive Reception Equipment (**"Confirmed Cable Head Ends"**). *Id.* § 1.1.

20.     For Confirmed Cable Head Ends, Aerodoc agreed to purchase, ship, and provide installation support for the requisite equipment (**"Reception Equipment"**). *Id.* §§ 1.1-1.4.

21.     Prior to shipment of any Reception Equipment, however, Aerodoc had to secure the Confirmed Cable Head End's agreement to certain terms of use, including those outlined in schedules to the Services Agreement (**"Confirmed Cable Head Ends Agreement"**). *Id.* § 1.5.

22.     Aerodoc also agreed to provide Eutelsat regular delivery and equipment installation progress reports, as well as any necessary equipment inspections and, as may be needed, assistance with maintenance and repair of the deployed Reception Equipment. *Id.* § 1.7.

23.     In consideration for Aerodoc's substantial services over the Agreement's ten-year term, Eutelsat agreed to pay Aerodoc $3,853,422.00, plus applicable taxes (**"Consideration"**), as follows:  (i) an initial payment of $2,540,000.00 due upon evidence of Aerodoc's purchase of certain Reception Equipment and (ii) yearly installment payments over the term of the Services Agreement as follows:

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

| Invoice Date | Invoice Amount | Payment Date |
|---|---|---|
| July 31, 2015 | US$350,000.00* | 30 business days from the date of the invoice |
| July 31, 2016 | US$300,000.00* | 30 business days from the date of the invoice |
| July 31, 2017 | US$250,000.00* | 30 business days from the date of the invoice |
| July 31, 2018 | US$100,000.00* | 30 business days from the date of the invoice |
| July 31, 2019 | US$52,237.00* | 30 business days from the date of the invoice |
| July 31, 2020 | US$52,237.00* | 30 business days from the date of the invoice |
| July 31, 2021 | US$52,237.00* | 30 business days from the date of the invoice |
| July 31, 2022 | US$52,237.00* | 30 business days from the date of the invoice |
| July 31, 2023 | US$52,237.00* | 30 business days from the date of the invoice |
| July 31, 2024 | US$52,237.00* | 30 business days from the date of the invoice |

*Plus applicable taxes.*

*Id.* § 2.1.

24.     The Consideration did not include services, for example, rendered in connection with upgrading a Confirmed Cable Head End's existing equipment, any installation service, or the delivery of Reception Equipment to countries other than Argentina, Chile, Paraguay, Uruguay. *Id.* § 2.2.

25.     The Services Agreement provided that these and other additional services to which the parties agreed or Eutelsat expressly requested would be deemed **"Additional Services,"** and Aerodoc would be entitled to additional compensation. *Id.* §§ 2.2, 15.

26.     The Services Agreement further provided that, under certain circumstances, Eutelsat may be entitled to a credit determined as follows:

> [T]he Consideration shall be pro-rata adjusted by dividing the full amount of the Consideration by 590 and multiplying the result times the actual number of Confirmed Cable Head Ends . . . (the "Pro-rated Amount"). In such case, EUTELSAT shall

6

> be deemed to have a credit against [Aerodoc] in an amount
> equivalent to the difference between the Consideration and the
> Pro-rated Amount less five percent (5%) of such difference
> (**the "Credit"**).

*Id.* § 2.2 (emphasis added). In no event, however, would Eutelsat be entitled to the Credit in

an amount greater than 25% of the Consideration. *Id.*

27.     Eutelsat had the option of using the Credit partially or totally. If used toward

the payment of any Additional Services, Eutelsat had to use the Credit on or prior to 90

days after it provided to Aerodoc the list of Confirmed Cable Head Ends. *Id.*

28.     If used toward any outstanding yearly installment of the Consideration, the

Credit had to be applied to the outstanding installments in inverse order of maturity (i.e.,

the first installment to which the Credit could be applied is the tenth installment due in

2024.). *Id.*

29.     Additionally, the Services Agreement contained a call option:

> Upon expiration of this Agreement pursuant to Section 6 or
> termination thereof pursuant to or [sic] Section 8, EUTELSAT
> shall have the option to buy, and [Aerodoc] the obligation to sell
> to EUTELSAT . . . all or part of the Reception Equipment delivered
> to the Confirmed Cable Head Ends that executed the Confirmed
> Cable Head Ends Agreements, at EUTELSAT's sole discretion, at a
> price of US$1.00 . . . per unit (**the "Call Option"**).

*Id.* § 9 (emphasis added).

30.     Section 8 provided, in pertinent part, that either party may terminate the

Agreement upon failure of the other party to comply with its obligations. Upon such a

breach, the non-breaching party had to provide a written notice to cure within five

business of receipt of the notice. In the event the breaching party failed to cure, the non-

breaching party would be entitled to terminate the Agreement by written notice. *Id.* § 8.1.

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

31.     The Agreement expressly provided that neither party could terminate the Agreement without cause. *Id.* § 8.4.

32.     The Services Agreement also provided that Florida law would govern its construction and interpretation. *Id.* § 25.

## II.     Eutelsat's Breaches of the Services Agreement.

33.     Well into the term of the Services Agreement, Aerodoc properly submitted to Eutelsat three invoices totaling $1,341,650 for Additional Services requested by Eutelsat, as well as the 2018 and 2019 yearly installments due under the Agreement.

34.     While Eutelsat acknowledged that Aerodoc performed the services on which the invoices were based, it nevertheless refused to remit payment.

35.     Aerodoc sent Eutelsat a notice of default and demand to cure, providing an enlarged time to do so. Instead of remitting payment, on the same day it received the notice, Eutelsat fired back with a hastily written letter of its own purporting to terminate the Agreement effective immediately. Eutelsat claimed as a basis to terminate the Agreement that Aerodoc had supposedly failed to procure guarantee bonds five years earlier,[2] an obligation the parties acknowledged at the time was impossible to perform because the bonds were unavailable in the marketplace. Consistent with that acknowledgement, Eutelsat continued its contractual relationship with Aerodoc, requesting and benefitting from Aerodoc's services for the next five years.

---

[2] Under the Agreement, the guarantee bonds were to be delivered to Eutelsat within 90 days from the "Execution Date" of the Agreement. Service Agreement § 5.1. The Agreement's Execution Date was June 24, 2015. *Id* at 1.

8

36.     In its letter, Eutelsat also complained of a purported failure by Aerodoc to deliver Reception Equipment to certain Confirmed Cable Head Ends despite the fact that the Equipment was not delivered because Eutelsat specifically asked Aerodoc not to deliver it.

37.     Aerodoc held the Reception Equipment after receiving Eutelsat's written instructions to do so. As a result, Aerodoc has incurred and continues to incur storage costs (based on fees previously negotiated and agreed to in writing by the parties) increasing the amount of the debt Eutelsat has refused to pay.

38.     In the same letter in which it wrongfully asserted a right to terminate the Agreement, Eutelsat purported to exercise the Agreement's Call Option and demanded that Aerodoc (i) sell to Eutelsat "all of the Reception Equipment at a price of US$1.00 (one dollar)" and (ii) assign to Eutelsat all Confirmed Cable Head Ends Agreements.

39.     Eutelsat claims that the Services Agreement permits it to exercise the Call Option even if its purported termination of the Agreement was improper.

40.     Eutelsat also claims the right to exercise the Credit.

41.     Neither of these claims are valid or available.

42.     Aerodoc has been compelled to retain the undersigned counsel to maintain this action and has become obligated thereto for reasonable attorneys' fees and costs.

43.     All conditions precedent to the filing of this action have been performed, satisfied, or waived.

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

## COUNT I
## <u>Breach of Contract Against Eutelsat</u>

44.    Aerodoc realleges and incorporates paragraphs 1 through 43 of this Complaint as if fully set forth herein.

45.    Aerodoc and Eutelsat entered into a contract, namely the Services Agreement.

46.    Aerodoc did all, or substantially all, of the essential things the Services Agreement required it to do.

47.    All conditions required by the Services Agreement for Eutelsat's performance have occurred.

48.    Eutelsat breached the Services Agreement by failing to do something essential the Agreement required it to do or doing something the Agreement prohibited, including but not limited to failing to pay amounts due under the terms of the Services Agreement and wrongfully purporting to terminate the Services Agreement.

49.    Aerodoc was damaged by these failures.

**WHEREFORE**, Aerodoc respectfully requests that the Court enter a judgment for Aerodoc and against Eutelsat for damages, award pre-judgment and post-judgment interest, award Aerodoc its costs, and grant such other and further relief as may be proper.

## COUNT II
## <u>Declaratory Relief Against Eutelsat</u>

50.    Aerodoc realleges and incorporates paragraphs 1 through 43 of this Complaint as if fully set forth herein.

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

51.     An actual and justiciable controversy has arisen and now exists between Aerodoc and Eutelsat concerning whether Eutelsat is entitled to exercise the Call Option or whether its material breach of the contract and improper termination deprives Eutelsat of that right.

**WHEREFORE**, Aerodoc requests that the Court (1) enter a declaratory judgment that determines Eutelsat does not have the right to exercise the Call Option because it was in material breach of the Services Agreement, improperly terminated the Services Agreement, and/or failed to satisfy or discharge a condition precedent to exercising the Call Option, (2) award Aerodoc its costs, and (3) grant such other and further relief as may be proper.

Date: July 17, 2020.

Respectfully submitted:

Homer Bonner

Attorneys for AERO DOC, INC.
1200 Four Seasons Tower
1441 Brickell Avenue
Miami Florida 33131
Phone: (305) 350-5143
Fax: (305) 372-2738

 /s/ Kevin P. Jacobs
Kevin P. Jacobs, Esq.
kjacobs@homerbonner.com
Florida Bar No.: 169821
Rayda Alemán
raleman@homerbonner.com
Florida Bar No: 0017386
Antonio M. Hernandez, Jr.
ahernandez@homerbonner.com
Florida Bar No. 0117756

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com